# UNITED STATES DISTRICT COURT

# WESTERN DISTRICT OF LOUISIANA

# LAFAYETTE-OPELOUSAS DIVISION

| | | |
|---|---|---|
| **DONNA GAIL HOLMES** | * | **CIVIL ACTION NO. 07-0095** |
| **VERSUS** | * | **JUDGE DOHERTY** |
| **COMMISSIONER OF SOCIAL SECURITY** | * | **MAGISTRATE JUDGE HILL** |

## REPORT AND RECOMMENDATION

This social security appeal was referred to me for review, Report and Recommendation pursuant to this Court's Standing Order of July 8, 1993. Donna Gail Holmes, born September 30, 1967, filed applications for a period of disability, disability insurance benefits, and supplemental security income payments on December 20, 2004, alleging disability since November 23, 2004, due to Hepatitis C, personality disorder, and substance abuse disorder in alleged remission.[1]

## FINDINGS AND CONCLUSIONS

After a review of the entire administrative record and the briefs filed by the parties, and pursuant to 42 U.S.C. § 405(g), I find that there is substantial evidence in the record to support the Commissioner's decision of non-disability and that the

---

[1]Claimant had filed four prior applications. (Tr. 19).

Commissioner's decision comports with all relevant legal standards.  *Anthony v. Sullivan*, 954 F.2d 289, 292 (5th Cir. 1992).

In fulfillment of F.R.Civ.P. 52, I find that the Commissioner's findings and conclusions are supported by substantial evidence, which can be outlined as follows:

**(1) Records from University Medical Center ("UMC") dated June 8, 2004 to December 29, 2004**.  On July 2, 2004, claimant complained of right shoulder pain. (Tr. 127).  She had a history of a right rotator cuff problem and carpal tunnel syndrome.  The assessment was right shoulder pain, for which she was prescribed Flexeril and Vioxx.

On August 19, 2004, claimant complained of chest pain.  (Tr. 124).  She had a history of bipolar disorder.  (Tr. 123).  The assessments were bronchitis, right shoulder pain, musculoskeletal pain, and bipolar disorder.  (Tr. 124).

On October 7, 2004, claimant complained of fatigue and decreased appetite. (Tr. 118).  Right shoulder x-rays were normal.  (Tr. 119).  Her diagnosis was Hepatitis C.  (Tr. 103, 114, 116).

On November 23, 2004, claimant stated that she was having suicidal thoughts and depression.  (Tr. 101).  She also complained of losing too much weight.  The assessment was bipolar/anxiety disorder and elevated liver enzymes.  (Tr. 94-95). She was prescribed Depakote.  (Tr. 96).

2

**(2) Consultative Psychological Evaluation by Sandra B. Durdin, Ph.D., dated February 21, 2005**.  Dr. Durdin reported that claimant was very hostile prior to the appointment.  (Tr. 135-36).  She eventually calmed down, and apologized for her behavior.  (Tr. 136).

Claimant reported that she had abused cannabis, crack cocaine, and had snorted cocaine.  (Tr. 137).  She stated that she had quit five years prior.  She had received court-ordered substance abuse and mental health treatment.  She admitted that she had not been consistent in taking medications, including Prevacid, Augmentin, Trileptal, Thiothixine, Zoloft, Seroquel, Panafil, and Pramotic solution.

On examination, claimant was very alert and fully oriented.  She had normal pace.  She was attentive with good concentration.  She spoke in fully intelligible language.

Claimant was angry, then later tearful, and apologized for her behavior before leaving.  Her recent memory was fair.  She had intact immediate and long-term memory.

Claimant had an average fund of information, adequate social awareness, and estimated average intelligence.  She had intact thought processes, had seen figures late at night, and had thought that her name was called.  She had no evidence of psychosis.  She had not been suicidal or homicidal.

3

Dr. Durdin's impression was polysubstance abuse, allegedly in long-term remission, and borderline personality disorder.  She determined that claimant had the ability to understand, recall, and carry out simple instructions, as well as repetitive details.  She could sustain attention for two-hour blocks of time.  She apparently had better social skills than she had demonstrated that day.  She was still on medical leave from a 16-month job.  Dr. Durdin stated that she would not recommend claimant for work with the public or close work with a team of co-workers.  However, she opined that claimant should able to carry out more solitary work.

Claimant's social life had been characterized by violence and drug usage.  Her personal life seemed historically more problematic than public life.  She could and did handle funds.  Dr. Durdin concluded that claimant needed psychiatric consultation and monitoring for drug abuse.

**(3) Psychiatric Review Technique Form dated March 9, 2005**.  Pamela Davis Martin, Ph.D. assessed claimant for personality and substance addiction disorders. (Tr. 138).  Dr. Martin found that claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, and moderate difficulties in maintaining concentration, persistence, or pace.  (Tr. 148).  Claimant had no episodes of decompensation.

4

**(4) Residual Functional Capacity ("RFC") Assessment (Mental) dated
March 10, 2005**.  Jeanne L. George, Ph.D. determined that claimant was moderately
limited as to her ability to understand, remember, and carry out detailed instructions;
maintain attention and concentration for extended periods; perform activities within
a schedule, maintain regular attendance, and be punctual within customary tolerances;
work in coordination with or proximity to others without being distracted by them;
complete a normal workday and workweek without interruptions; interact
appropriately with the general public; accept instructions and respond appropriately
to criticism from supervisors; get along with coworkers or peers without distracting
them or exhibiting behavioral extremes, and maintain socially appropriate behavior
and to adhere to basic standards of neatness and cleanliness.  (Tr. 152-53).

**(5) Records from Iberia Comprehensive Community Health Center dated
June 5, 2003 to December 5, 2005**.  Claimant was referred by Iberia Mental Health
on June 5, 2003, for a history of bipolar disorder and substance abuse.  (Tr. 171).  She
had been off of her medications.  She reported a history of alcohol and cocaine abuse,
which she had not used in three years.  (Tr. 172).  She was on five years' probation.

On examination, claimant was worrisome, depressed, sad, anxious, constricted,
and had a mild flight of ideas.  (Tr. 171).  She had periodic auditory thought contents.

5

She reported sleep disturbances, trouble interacting with coworkers, and increased paranoid feelings.

The assessment was bipolar disorder. Claimant was prescribed various medications during her treatment, including Risperdal, Depakote, Lexapro, Wellbutrin, Trazadene, Adderall, Seroquel, Trileptal, Zoloft, and Zyprexa. (Tr. 156, 162, 170, 175-76). She missed several appointments.[2] (Tr. 158, 163, 165, 177, 178, 180).

On July 28, 2005 and December 5, 2005, claimant had high AST and ALT levels. (Tr. 184, 187). On December 5, 2005, claimant complained of stomach pains and swelling. (Tr. 173). CT scans of the abdomen and pelvis showed mild fatty infiltration of the liver and minimal stranding within the lower pelvis on the right. (Tr. 182-83).

**(6) Records from Dauterive Hospital dated December 22, 2005 to March 16, 2006**. On March 16, 2006, claimant was admitted for symptomatic cholelithiasis. (Tr. 188). She underwent a laparoscopic cholecystectomy with intraoperative cholangiogram. The diagnosis was cholecystitis.

---

[2]Failure to follow prescribed medical treatment precludes an award of benefits. 20 C.F.R. § 404.1530(a), (b); *Johnson v. Sullivan*, 894 F.2d 683, 685, n. 4 (5th Cir. 1990).

**(7) Report of Dr. Luis E. Alvarez dated August 7, 2006**.  Claimant was seen on May 23, 2006, with a diagnosis of hepatitis C.  (Tr. 203).  Dr. Alvarez stated that due to claimant's history of bipolar disorder and manic depression, the current treatment available would not be indicated for claimant.  He noted that he would monitor her blood work regularly and notify her when a new treatment for hepatitis C was available.

**(8) Memorandum from Iberia Comprehensive Community Health Center dated July 31, 2006**.  Cindy Richards, APRN, CNS wrote that claimant had bipolar disorder, mixed type, severe. (Tr. 205).  Ms. Richards stated that claimant was unable to work due to severe mood fluctuations.  Claimant's mood problems included paranoia with aggressive behavior, which caused claimant to have problems with co-workers.

**(9) Claimant's Administrative Hearing Testimony**.  At the hearing on April 19, 2006, claimant was unrepresented.  (Tr. 208).  She was 38 years old.  She was a high school graduate.

Claimant testified that she was 5 feet 1 inch tall and weighed about 183 pounds.  (Tr. 210).  She lived with two of her four children and her male cousin.

Regarding impairments, claimant testified that she had quit working as a housekeeper at a nursing home on November 23, 2004.  (Tr. 211-12).  She reported

that she had started showing up late because she did not feel like going to work sometimes.  (Tr. 211).  She stated that people would look at her, and she did not like it.  She said that she was written up two or three times.

Claimant stated that she had hepatitis C.  (Tr. 212).  She had been convicted of possession of crack cocaine.  (Tr. 212-13).  She reported that she did not drink or use crack cocaine any longer.  (Tr. 213).

Additionally, complained that she was depressed about her hepatitis C.  (Tr. 214).  She testified that she had bad memory and concentration.  (Tr. 214).  She reported that she could not sleep.  She said that she felt tired.  (Tr. 215).  She also believed that people were trying to hurt her.

Claimant testified that she was thrown out of the mental health clinic because she kept forgetting her appointments.  She stated that she was on four or five medications, including Nexium.  She reported that she had been physically and sexually abused as a child.  (Tr. 216).  She also said that she always felt like things were crawling on her, and she picked her skin when she got nervous.  (Tr. 222).

**(10) Administrative Hearing Testimony of Wallace Lewis**.  Mr. Lewis stated that he was claimant's cousin, and had been living with her for two to three years.  (Tr. 217).  He reported that claimant had mood swings.  (Tr. 218).  He stated that she took a lot of medication.

**(11) Administrative Hearing Testimony of William Stampley, Vocational Expert ("VE")**.   Mr. Stampley described claimant's past work as a cleaner, housekeeping as light and unskilled.  (Tr. 220).  He stated that a person in that job would have to receive the assignment from a supervisor, but would not usually have to see the general public.  (Tr. 220-21).

**(12) The ALJ's Findings are Entitled to Deference**.  Claimant argues that: (1) the ALJ should have found her disabled under one of the listings; (2) the evidence does not support the ALJ's conclusion that she could return to her past work as a housekeeper, and (3) the ALJ should have sent claimant for a consultative psychological examination.

As to the first argument, claimant asserts that the ALJ should have found her disabled under the listing at § 12.08.  In determining claimant's functional limitations under the listings, the ALJ referred to Part B of Section 12.08.  [rec. doc. 8, p. 6].  20 CFR Pt. 404, Subpt. P, App. 1, § 12.08.  (Tr. 18).  This section requires that claimant establish at least two of the following: (1) marked restriction of activities of daily living; or (2) marked difficulties in maintaining social functioning; (3) marked difficulties in maintaining concentration, persistence, or pace, or (4) repeated episodes of decompensation, each of extended duration.

In finding that claimant's impairment did not meet this part of the listing, the ALJ relied on the Psychiatric Review Technique form.  (Tr. 18). Dr. Martin found that claimant had mild restriction of activities of daily living, moderate difficulties in maintaining social functioning, moderate difficulties in maintaining concentration, persistence, or pace,  and no episodes of decompensation. (Tr. 148).  Additionally, Dr. Durdin found that claimant had average ability to do activities of daily living, normal pace, and was attentive with good concentration.  (Tr. 137). Thus, the psychological reports show that claimant was not markedly restricted in any two areas of functioning or suffered from repeated episodes of decompensation as required under the "B" criteria of the listing at § 12.08.

For a claimant to show that her impairment matches a listing, it must meet *all* of the specified medical criteria. (emphasis in original).  *Sullivan v. Zebley*, 493 U.S. 521, 530, 110 S.Ct. 885, 891, 107 L.Ed.2d 967 (1990).  An impairment that manifests only some of those criteria, no matter how severely, does not qualify.  *Id*.  As claimant has not demonstrated that she met all of the criteria under § 12.08, the ALJ's finding that claimant's impairments did not meet this listing is entitled to deference.

Next, claimant argues that the ALJ erred in applying the testimony of the vocational expert.  [rec. doc. 8, p. 8].  Specifically, she asserts that the ALJ assumed that her job as a housekeeper would not require personal contact by claimant, when

the vocational expert testified otherwise. [rec. doc. 8, p. 8].  However, Mr. Stampley stated that the only significant contact or communication that a housekeeper would have with others would be to receive the assignment from a supervisor.  (Tr. 220-21). Additionally, he testified that the job "usually" required no contact with the general public.  (Tr. 221).

The Dictionary of Occupational Title's states that "taking instructions-helping" is the highest functional requirement relating to interaction with people for the housekeeper/cleaner position. DICOT § 323.687.014 (4th ed. 1991). This description does not indicate that a claimant would have significant contact with the public for this job.  Thus, this argument lacks merit.

Next, claimant argues that the ALJ should have proceeded to Step 5 of the evaluation process by presenting hypothetical situations to the vocational expert which included her limitations.  [rec. doc. 8, p. 10].  However, the ALJ is not required to move beyond step 4 of the sequential evaluation process when he finds that a claimant can perform her past work.  20 C.F.R. §§ 404.1520(f) and 416.920(f).  Thus, this argument lacks merit.

Finally, the undersigned notes claimant's assertion that the ALJ should have sent her for a consultative psychological examination.  [rec. doc. 8, p. 2].  Under some circumstances, a consultative examination is required to develop a full and fair

11

record. *Jones v. Bowen*, 829 F.2d 524, 526 (5th Cir. 1987). The decision to require such an examination is discretionary. *Id*. In *Turner v. Califano*, 563 F.2d 669, 671 (5th Cir. 1977), the Fifth Circuit stated "[t]o be very clear, 'full inquiry' does not require a consultative examination at government expense unless the record establishes that such an examination is necessary to enable the administrative law judge to make the disability decision." A claimant must "raise a suspicion concerning such an impairment necessary to require the ALJ to order a consultative examination to discharge his duty of 'full inquiry' under 20 C.F.R. § 416.1444." *Pearson v. Bowen*, 866 F.2d 809, 812 (5th Cir. 1989), quoting *Jones*, 829 F.2d at 526.

In this case, claimant did not brief this argument. However, the undersigned notes that claimant did undergo a consultative psychological evaluation with Dr. Durdin. (Tr. 135-37). Thus, this argument lacks merit.

Based on the foregoing, it is my recommendation that the Commissioner's decision be **AFFIRMED** and that this action be **DISMISSED** with prejudice.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and F.R.Civ.Proc. 72(b), parties aggrieved by this recommendation have ten (10) business days from service of this Report and Recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within ten (10) days after

being served with a copy thereof.  Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FACTUAL FINDINGS AND/OR THE PROPOSED LEGAL CONCLUSIONS REFLECTED IN THIS REPORT AND RECOMMENDATION WITHIN TEN (10) DAYS FOLLOWING THE DATE OF ITS SERVICE, OR WITHIN THE TIME FRAME AUTHORIZED BY FED.R.CIV.P. 6(b), SHALL BAR AN AGGRIEVED PARTY FROM ATTACKING THE FACTUAL FINDINGS OR THE LEGAL CONCLUSIONS ACCEPTED BY THE DISTRICT COURT, EXCEPT UPON GROUNDS OF PLAIN ERROR.  *DOUGLASS V. UNITED SERVICES AUTOMOBILE ASSOCIATION*, 79 F.3D 1415 (5TH CIR. 1996).**

Signed December 30, 2007, at Lafayette, Louisiana.

C. MICHAEL HILL
UNITED STATES MAGISTRATE JUDGE

13